# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SANDRA H. FAUST,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.: 2:00-CV-0938-VEH** |
| | ) | |
| **PEMCO AEROPLEX, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Sandra H. Faust has sued Defendant Pemco Aeroplex, Inc. under the Americans With Disabilities Act (ADA) for failing to reasonably accommodate her physical disability.  Defendant has filed a motion for summary judgment arguing that Plaintiff has failed to meet her burden of proof as to whether she (1) has a disability, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability.  The parties have briefed the issues extensively.

For the reasons stated, Defendant's Motion for Summary Judgment is due to be **GRANTED.**

1

**Facts**[1]

**I. Events Leading to Termination of Plaintiff's Employment**

Defendant refurbishes airplanes.  (Pl.'s Depo. I at 51-52).  In 1980, Plaintiff

was hired by the Defendant as a cleaner.  (Pl.'s Depo. I at 50, 71).  As a member of

the production and maintenance division of Pemco, Plaintiff was represented by the

United Automobile, Aerospace Workers of America (UAW). (Pl.'s Depo. I at 97-98).

In 1988, Plaintiff injured her right elbow while working.  (Pl.'s Depo. I at 86-87).  In

1991, Plaintiff injured her left elbow in a work related injury.  (Pl.'s Depo. I at 86-

87).   Afterwards, Plaintiff had problems with both of her elbows, hands, wrists,

shoulders, and with her neck.  (Pl.'s Depo. I at 87-88).  She was placed under the

following permanent medical restrictions: no lifting over 10 pounds, no overhead

lifting or reaching, no ladder climbing, restricted use of her right arm, no repetitive

use of her right arm, no repeated or prolonged bending, no crawling, and no

remaining in a single position for more than a short period of time.  (Pl.'s Depo. I at

89, 92-93, 94).

In 1996, the UAW members of the Defendant's work force went on strike.

(Pl.'s Depo. I at 131).  Up until the strike, Plaintiff had worked as a cleaner within the

---

[1] Where disputed the court has viewed the facts, as it must, in the light most favorable to
Plaintiff. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).

restrictions mentioned above after her injuries. (Pl.'s Depo. I at 77). The strike ended on March 14, 1997 when members of the collective bargaining unit accepted a new three year labor agreement, also called a collective bargaining agreement (CBA). (Pl.'s Depo. I at 132). One of the Defendant's goals after the strike was to revise job classifications and descriptions to make operations more efficient and productive. (Exh. 1 of Pl.'s Depo. I at 120). During contract negotiations, the number of labor positions in Defendant's production and maintenance areas was reduced from 64 to 26. (Hauck's Depo. at 14-15). As part of this reclassification, Plaintiff's pre-strike cleaner position was consolidated into the depainter position. (Drigger's Depo. at 38).

Plaintiff, one of the first employees called back after the strike, returned to work on April 22, 1997. (Pl.'s Depo. I at 136). Plaintiff returned to work on light duty because her medical restrictions prevented her from working in the new depainter position. (Hauck's Depo. at 15, 16-17). Plaintiff stated that her duties included cleaning, painting, and performing the work of an evaluator/inspector which required her to inspect airplane parts for cracks, broken or missing rivets, dent, rust, and corrosion. (Pl.'s Depo. I at 137).

Plaintiff worked about 10 calendar days after returning from the strike, was laid off for three days, and then returned to work on light duty cleaning parts for two to three weeks. (Pl.'s Depo. I at 182-184). This cleaning work fell under the depainter

classification so Plaintiff was still within her seniority division. (Pl.'s Depo. II at 33). The evaluating work, however, was a sub-job function that fell outside her seniority division.   (Pl.'s Depo. II at 33).   While working in the tin building Plaintiff had to perform shakedown work which fell outside her job classification and therefore her placement violated the CBA. (Pl.'s Depo. II at 34, 35; Hauck's Depo. at 13-14).

The UAW complained about Plaintiff working outside her job classification. (Hauck's Depo. at 13).   As a result, Plaintiff was sent home on sick and accident leave on May 30, 1997 because no job was then available for her. (Hauck Depo. at 13).   During this time period, Pemco production had declined because of the strike. (Pl.'s Depo. I at 207).   After the first wave of employees, including Plaintiff, was called back there were about 600 employees still in the layoff pool. (Pl.'s Depo. I at 137).

On June 5, 1997, Plaintiff was called back from sick and accident leave. (Pl.'s Depo. I at 186).   She met with the plant's general manager, Hauck, who proposed that she work in the Planning or Production Control Area which is outside the collective bargaining unit. (Hauck's Depo. at 13-19, 23).   Hauck told her that he had spoken with Bevis, the union representative at the plant, who said this was fine as long as they did not cut Plaintiff's pay or take away any of her union benefits. (Pl.'s Depo. I at 187). Plaintiff initially accepted this position in the Planning Department and the

union withdrew Plaintiff's grievance.  (Pl.'s Depo. I at 188-89, 198-99).

Plaintiff later met with Bruce Parker and Lenn Misconis about staying in the department.  (Pl.'s Depo. I at 191-92).  When they told her that she would have to be subject to the same pay range as the other employees in the department, she refused the job.  (Pl.'s Depo. I at 192).  Plaintiff estimated that this would be about an $8.00 per hour pay cut but that she later admitted that she never inquired as to the specific pay rate for the planning job, which would have been negotiable.  (Pl.'s Depo. I at 192; Pl.'s Depo. II at 80; Hauck's Depo. at 20).   She was also told that she would have to give up her union benefits (Pl.'s Depo. I at 209-210).

On June 19, 1997, Plaintiff met with Hauck, Misconis, Parker, and two union representatives.  (Pl.'s Depo. I at 194).  At this meeting, Plaintiff was offered the Planning Department job on a regular basis but she stated that she would rather not work at all than work in a non-union position.  (Hauck's Depo. at 19-21).  Plaintiff explained that she refused the position because she was told she would lose her union pay and benefits.  (Pl.'s Depo. I at 209-210; Pl.'s Depo. II at 73-74).

On June 20, 1997, Plaintiff was put on leave because Pemco did not have any light duty work in her classification for which she was eligible and because Plaintiff refused to stay in the Planning Department.  (Pl.'s Depo. I at 155-56, 212-213).  While on leave for the next three years, Plaintiff continued to receive her vacation

and holiday pay.  (Pl.'s Depo. II at 111-112).

In October 1998, Defendant offered Plaintiff a job as a vehicle operator because the medical department had determined the position would be within Plaintiff's medical restrictions.  (Pl.'s Depo. I at 227-29).  It is disputed as to what vehicle Plaintiff would have been required to operate.  Defendant claims this position involved operating a forklift which would have power steering and power breaks, and most likely would have an automatic transmission.  (Driggers Depo. at 80-83). Plaintiff claims that she was told by Pam Gillard that this position involved operating a tow motor.  (Pl.'s Exh. I at 3, ¶ 11).  Tow motors, which are used to haul planes and heavy equipment, do not have power steering.  (Pl.'s Exh. I at 3, ¶ 11).  Plaintiff had owned a manual transmission automobile until her doctor instructed her to quit shifting gears and to buy an automatic car with power steering.  (Pl.'s Exh. I at 3, ¶ 11).  Plaintiff could not turn her head to the right any further than halfway, so she was not able to drive a non-automatic vehicle.  (Pl.'s Exh. I at 3, ¶ 11).  Viewing the evidence in the light most favorable to the Plaintiff, the court must assume that the vehicle involved was a tow motor.

The CBA provided that an employee's continuing service record would be considered broken when she was absent either due to layoff or disability for a period equal to her length of continuous service with the company, but in no event in excess

of three years.  (Pl.'s Depo. I at 151-152).  An employee unable to return to work within the three year period would be automatically terminated under the CBA. (Bevis' Depo. at 80-81).   On June 23, 2000, Plaintiff received an automatic termination letter after three years of leave pursuant to the terms of the CBA.  (Pl.'s Depo. I at 156).

## **Standard of Review**

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See *Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer

9

rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

### Statutory and Regulatory Framework

Title I of the ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual in regard to...terms, conditions, [or] privileges of employment." 42 U.S.C. § 12112(a). Additionally, the ADA requires employers to "provide reasonable accommodations for known disabilities unless doing so would result in undue hardship to the employer." *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000) (quoting *Morisky v. Broward Co.*, 80 F.3d 445, 447 (11th Cir. 1996).

The ADA "places the burden on the employee to establish a prima facie case of disability discrimination." *Davis*, 205 F.3d at 1305. In order to establish a prima facie case of disability, Plaintiff must prove that (1) she has a disability, (2) she is a qualified individual, and (3) she was subjected to unlawful discrimination because of her disability. *Id*. Whether an individual has a "disability" within the ADA's purview turns on a determination of whether the individual has: a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or is regarded as having an impairment.

*Stewart*, 117 F.3d at 1285.  A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Davis*, 205 F.3d at 1305 (quoting 42 U.S.C. § 12111(8)).  The plaintiff retains at all times the burden of persuading the jury that reasonable accommodations were available.  *Holbrook v. City of Alpharetta, Georgia*, 112 F.3d 1522, 1526 (11th Cir. 1997) quoting *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996).  The employer, on the other hand, has the burden of persuasion on whether an accommodation would impose an undue hardship.  *Holbrook*, 112 F.3d at 1526 quoting *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996).

## Analysis

I. Whether Plaintiff has a Disability

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. *Collado v. United Parcel Service, Co.*, 419 F.3d 1143, 1154 (11th Cir. 2005) citing 42 U.S.C. § 12102(2).  The mere presence of an impairment is not, by itself, sufficient to constitute a disability under the ADA.  *Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d 907, 911 (11th Cir. 1996).  Rather, a disability exists only where the impairment

substantially limits one or more major life activities. *Albertsons, Inc. v. Kirkinburg*, 527 U.S. 555, 565 (1999). In *Bragdon v. Abbott*, 524 U.S. 624, 632-640 (1998), the Supreme Court outlined a three-step inquiry for determining whether an impairment substantially limits a major life activity so as to constitute a disability under the ADA. First, the court must determine whether Plaintiff has an impairment. *See id*. at 632. Second, the court must identify the life activity upon which the plaintiff relies, and determine whether it constitutes a major life activity under the ADA. *See id.* at 637. Finally, the court must determine whether the claimed impairment substantially limits that major life activity. *See id.* at 640.

Plaintiff in this case has an impairment. The relevant regulations define "physical impairment" as "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal...." (*Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 194-195 (2002) citing 45 CFR § 84.3(j)(2)(i). Plaintiff has injuries to both her arms that cause her continuing problems with both elbows, hands, wrists, shoulders and neck. (Pl.'s Depo. I at 87-88). Her doctor has placed her on permanent medical restrictions which include no lifting over 10 pounds, no overhead lifting or reaching, no ladder climbing, restricted use of her right arm, no repetitive use of her right arm, no repeated or prolonged bending, no crawling, and no

remaining in a single position for more than a short period of time.  (Pl.'s Depo. I at 89, 92-93, 94).  Since her injury, Defendant has allowed her to modify how she performs her job so that she can stay within her medical restrictions.  (Pl.'s Depo. I at 89, 92-93, 94).   Thus, Plaintiff has a musculoskeletal impairment within the meaning of the relevant regulations.

Having determined that Plaintiff has an impairment, the Court must next identify the life activity upon which Plaintiff relies and determine whether it constitutes a "major life activity" under the ADA.  The regulations define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  *Rossbach v. City of Miami*, 371 F.3d 1354 (11th Cir. 2004) citing 45 C.F.R. § 84.3(j)(2)(ii).  In her brief, Plaintiff bolded the following terms from a regulation worded nearly identically to the above regulation:[2] "caring for oneself," "performing manual tasks," and "working." (Pl.'s Brief at 16, FN 46).  In addition, Plaintiff bolded the terms "lifting" and "reaching" from another part of the EEOC interpretive regulations (29 C.F.R. Pt. 1630, App. 339).  (Pl.'s Brief at 16, FN 46).

---

[2] Plaintiff cites to the EEOC regulations interpreting the ADA.  29 C.F.R. § 1630.2(j)(2)(ii).  In *Rossbach*, the 11th Circuit explained that there are two potential sources of authority: the EEOC regulations and the regulations interpreting the Rehabilitation Act (45 C.F.R. § 84.3(j)(2)(ii)).  371 F.3d at 1357 FN4.  Therefore, this court is able to consider the Plaintiff's argument because she cited to the EEOC regulations.

Even though Plaintiff does not specifically develop arguments for how she is substantially limited in these major life activities, the court will consider whether Plaintiff's impairment substantially limits any of these major life activities. "Substantially limits means "considerable" or "to a large degree." *Toyota*, 534 U.S. at 197. "Major life activities" refer to those activities that are of central importance to daily life. *Id*. at 198. Plaintiff has not offered any evidence that her impairment prevents her from brushing her teeth, doing household chores, bathing, or other types of activities that would be of central importance to daily life. *See Id*. at 202. Therefore Plaintiff has provided no evidence of how her disability substantially limits her ability to perform those aspects of these activities that are of central importance to daily life in regard to the activities of caring for oneself, performing manual tasks, reaching, and lifting.

The major life activity of working requires a slightly different analysis. When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs. *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1227 (11th Cir. 2005) quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999). An individual's ability to work is "substantially limited" when the individual is "significantly restricted in the ability to perform either a class of jobs or a broad

14

range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *D'Angelo*, 422 F.3d at 1227 citing 29 C.F.R. § 1630.2(j)(3)(i).

Plaintiff has failed to show that she is limited in a broad range of jobs. Her second injury occurred in 1991 yet she was able to work up until 1996 when she went on strike. (Pl.'s Depo. I at 86-87, 131). Furthermore, she was able to perform the job in the planning department but chose not to because it would necessitate her losing her union pay and benefits. (Pl.'s Depo. I at 192). She has offered no evidence of how she is unable to provide a class of jobs or a broad range of jobs, and the evidence reveals that she could have worked in the planning department. Having not met her burden of proof, Plaintiff is not substantially limited in the major life activity of working. Therefore Plaintiff is not actually disabled.

Plaintiff may still be disabled under the ADA if she has a record of a substantially limiting impairment. The relevant regulation defines "record of impairment" as meaning that a person "has a history of, or has been classified as having, a mental or physical impairment that substantially limits one or more major life activities. *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999) citing 29 C.F.R. § 1630.2(k). The intent of this provision, in

15

part, is to insure that people are not discriminated against because of a history of disability. *Hilburn*, 181 F.3d at 1229. This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. *Id*. There are many types of records that could potentially contain this information, including but not limited to, education, medical, or employment records. *Id*.

Based on the evidence presented, Plaintiff does not have a record of a disability. Her medical and employment records reveal that Plaintiff has suffered injuries to both of her arms that continue to cause her problems with her elbows, hands, wrists, shoulders, and neck. (Pl.'s Depo. I at 86-88). As a result, she has been also placed on permanent medical restrictions which include no lifting over ten pounds and no overhead lifting. (Pl.'s Depo. I at 89). However, neither her medical records nor her employment records show that she has a history of being unable to perform a class of jobs or a broad range of jobs. In fact, her employment record seems to reveal exactly the opposite: she was able to work for the defendant for years after her injuries occurred and could in fact have performed the planning department job but chose not to because it was a non-union position. (Pl.'s Depo. I at 177, 188-192). Thus, Plaintiff has not met her burden of showing that she has a record of an impairment.

Even though Plaintiff has not met her burden of showing she is actually disabled or of showing that she has a record of a disability, she can still be disabled within the meaning of the ADA if she was regarded as having a disability by the Defendant.  A person regarded as having a disability is defined by the statute as one who "(1) has an impairment that does not substantially limit a major life activity, but is treated by an employer as though [she] does; (2) has an impairment that limits a major life activity only because of others' attitudes towards the impairment; or (3) has no impairment whatsoever, but is treated by an employer as having a disability as recognized by the ADA." *Hilburn*, 181 F.3d at 1230 citing 29 C.F.R. § 1630.2(l). As with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity of the individual. *Hilburn*, 181 F.3d at 1230.  Being regarded as unable to perform only a particular job is insufficient as a matter of law to prove that [the plaintiff] is regarded as substantially limited in the major life activity of working. *Collado*, 419 F.3d at 1157 quoting *Murphy v. United Parcel Serv.*, 527 U.S. 516, 525 (1999).

Plaintiff has failed to show that Defendant regarded her as being disabled. Defendant allowed her to work for five years after she was injured in 1991. (Pl.'s Depo. I at 87).  Plaintiff was also one of the first people that Defendant called back to work after the strike. (Pl.'s Depo. I at 136).  Furthermore, before placing her on

17

leave for the final time, Defendant offered her a position in the planning department that she worked in for a short period of time. (Pl.'s Depo. I at 188-189). Defendant would have allowed her to work permanently in this position but Plaintiff chose not to because she would have lost her union pay and benefits. (Pl.'s Depo. I at 190-192). While Defendant also offered her a position as a vehicle operator, when viewed in the light most favorable to the Plaintiff, this position would have involved her performing tasks outside of her medical restrictions. (Pl.'s Exh. I at 3, ¶ 11). Therefore, the Defendant offering her this position is irrelevant for the purposes of determining whether it regarded Plaintiff as disabled because Plaintiff could not have performed the required duties even if she had accepted the position. Nevertheless, the evidence as a whole, even when viewed in the light most favorable to the Plaintiff, suggests that Defendant regarded Plaintiff as being able to work. Again, Plaintiff has failed to meet her burden of proof in showing that she is regarded as being disabled by the Defendant.

Having failed to raise an issue of fact as to whether she is actually disabled, or whether she has a record of a disability, or whether she was regarded by the defendant as having a disability, Plaintiff has failed in the first element of a prima facie case under the ADA. Having failed this first element, the court need not analyze the other elements of Plaintiff's ADA claim.

## <u>Conclusion</u>

For the reasons stated, the court finds that the  Defendant's Motion for

Summary Judgment is due to be **GRANTED**. A separate order will be entered.

**DONE** and **ORDERED** this 16th day of March, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge